Leo Grifford, Boise, Idaho, currently a felon. My role, Martinez. Speak right up. Good morning. May it please the Court. In this case, the district court justified the warrantless entry and search of Mr. Martinez's home based on a perceived emergency. The Court expressly declined to apply United States v. Knights to this case because the searching officer was not aware that Mr. Martinez, the defendant appellant, was on state probation and that that state probation had what the so-called fourth waiver. The Court declined to apply Knights for that reason. The emergency, as set forth in the brief, there simply was no emergency here. Well, the police got a call that there was a domestic disturbance, which are always kind of touchy situations for officers, and the report indicated that there was a violent or potentially abusive male involved in the disturbance. Is that right? A male subject out of control. Out of control. And a 9-11 hang-up. However, when the officer arrived and he questioned Mrs. Martinez. Was in the front yard sobbing. Was in the front yard. She was crying, but she was not injured at all and did not tell the officer anything other than that they had been arguing and that her husband, Monroe, was in the house and was upset. And was yelling. And at the point in time when he decided to enter the house, that was the sum of the information that he had. So let's take an alternate situation. Let's suppose that they had done, as you suggested, just left and that she goes back in the house and gets killed. Obviously, the police would be criticized for not going in with a yelling male and doing a protective sweep to make sure that the situation was secure, don't you think? Judge, I'm not suggesting that he should have just left, but I do think there were other means available short of entering this home without a warrant. He made no attempt to interview Mrs. Martinez at all to find out what, in fact, had happened. He made no attempt to question the boy who was at the door. I need to talk to your dad. He made no attempt to call inside the residence. I mean, there were a number of things I think he could have done. Well, let me ask you, I guess we're assuming that it's the wife that had somehow been the victim. Why is that a fair assumption? What if the guy's in there yelling? What if he's the one that needs help? Why can't the officer reasonably leave it in that regard? Well, in this case, Your Honor, the officer was specifically asked whether the yelling that he heard emanating from in the house was a cry for help. And he said no, it wasn't. It was just this vague yelling. So we have a couple that's been arguing, no one's injured, and we have some yelling. That's the information that was available to him. And he specifically said it wasn't a cry for help. How do you distinguish Brooks from this situation? Excuse me, Your Honor? How do you distinguish Brooks from this situation? Well, in Brooks, there was probable cause to arrest Mr. Brooks to begin with. Oh, I'm sorry. I'm confusing Brooks with one of the Knight's cases. I'm sorry. Brooks is the hotel room. Right. The hotel room. He goes to the hotel room and then goes into the room and makes a search there. Well, he was unable, the officer in that case was unable to find out. The only way he could have found out whether there was someone inside the room that was injured was to go in the room. In this case, I don't think that was necessary. So under your theory, what he should have done was either question the woman more extensively or talk with the young boy? I think he should have attempted, made some reasonable effort to communicate with Mr. Martinez, who was inside the house. Before doing that, though, I think he should have at least interviewed Mrs. Martinez or at least found out, well, what happened? Does he have a weapon? Is he hurt? Now, once he does go in the house, I think this goes a little further. Once he does go in the house, I also submit that under the emergency doctrine, the scope of that search has to be limited to finding out if there's an emergency or not and leaving the house. In this case, he takes Mr. Martinez out to the front of the house using a different route than he used to go in the house. And I submit that once he discovers Mr. Martinez in the bedroom, discovers that no one's hurt or he's not hurt, he doesn't have a weapon or anything, I think that should have ended it. I think he should have taken Mr. Martinez out to the front. Well, the officer explained that he wanted to take him into the living room because he wanted to get him out of a place where he could easily grab a weapon and that it's typical. And his testimony was that it was typical for people to hide weapons under beds, and that's where Martinez was. And so he said, I want you to go in the living room, and that was his purpose. And there's no contradiction as to that purpose. He isn't using any means of subterfuge to try to get him into, say, a bathroom or something like that where he could have just as easily done that, though, in the laundry room or the hallway that's right there adjacent to the bedroom where he first sees Mr. Martinez. Right. But he wanted to sit down and talk to him. That was the officer's testimony, right? Well, I mean, again, I think that's going beyond what was necessary to determine whether there was an emergency or not to take him through other parts of the house. He could have just taken him out of the bedroom, secured him to make sure he didn't have a weapon with him or anything. Well, I understand your argument, but why does it amount to constitutional error to pick a living room instead of a hallway? Or a constitutional violation? Because a search of a half- Well, a search of a residence without a warrant is presumptively unreasonable. He didn't have a warrant. Well, we know, though, from Bowie, Maryland v. Bowie, that you can do some protective sweeps to make sure you don't have a weapon, even if you're in the house. And you look through the grab area to make sure you can't grab anything, but you're also allowed at least to look in the adjacent areas. And he didn't search anything. He just saw the stuff. And if he'd spotted it from the door, we'd be in the same circumstance, wouldn't we? No. He spotted it with the door, but he didn't. He went in the house. And he made no attempt at all to communicate with this man before going in the house. Right. Well, I'm separating your arguments. I mean, the first part of your argument is that there's a warrantless entry. Now, if we say, all right, well, we think the entry is okay, then the second part of your argument is what the officer did in the house. And I guess that's the part I would address. Well, I'm not conceding that the entry was okay. No, I understand that. But assuming that it was, I think it has to be circumscribed, limited in scope under the circumstances, considering there's not a warrant. It has to be tailored to the perceived emergency. And there simply wasn't any sign of an emergency here. He goes in there. He sees him in the bedroom. And he's supposedly looking under the bed for something. But he doesn't have anything. There's no testimony that he has a weapon in his hands, that he makes any threatening gestures. There's no ñ the only one in the house that's saying anything is him. There isn't anybody else that's screaming. And as I said earlier, it was not a cry for help. He just decides he's going to go in the house. And later he says, I went in there to see if anybody ñ to see what was going on, to see if anybody needed to be arrested. Your time is under two minutes. Did you want to save any for rebuttal? I'd like to reserve the remainder of my time for rebuttal, Your Honor. Thank you for your argument, counsel. We'll hear from the government at this time. Good morning, Your Honor. My name is Kevin Maloney. I'm with the United States Attorney's Office in the District of Idaho. I represent the government. Your Honor, the police officer in this case was called to the Martinez residence by a 911 disconnect. He did not go there of his own accord. He knew from his experience that it was a residence with a history of domestic violence. When he arrived there and heard the angry yelling coming from inside the house, he had a duty to determine the source of that yelling and determine whether there was a risk either to the person who was yelling or to anyone else on the scene. He made that determination in a reasonable manner by entering the house, and once he entered, he limited the scope of his activities to the nature of the emergency or the nature of the exigency. He did not search under the bed. He didn't look in any cabinets or any drawers. He found Mr. Martinez in a place that he felt was unsafe, so he asked him to move to a different room. He didn't draw a weapon. He didn't lay any hands on Mr. Martinez. He limited his activities until he saw the weapons, and then he interrogated Mr. Martinez, right? Your Honor, I would not characterize this interrogation. Well, what if he had asked, are these your weapons? Yes, what are those guns doing on the couch? I understand what he did ask. What if he had asked, are these your weapons? I think under the circumstances, that would have been a reasonable question. I don't think that asking that question in and of itself would have been an interrogation. It would have been an interrogatory nature, but it would have been more in the sense of a Terry stop and questions about circumstances than it would be in the sense of a Miranda interrogation. Was Martinez free to leave? The officer testified about that. He testified that Martinez was free to leave, and on cross-examination defense counsel asked him, do you mean you would let Martinez walk out the front door? And the officer clarified, no, I would not have let him walk out the front door because that's where Mrs. Martinez was, and it was the officer's intent to keep them separate, both for interviewing purposes and for the purpose of safety. So the officer's testimony was that although Martinez was free to leave, he wasn't free to leave in any direction he chose. There certainly was some level of detention, if you will, in a Terry sense while the officer was investigating, but it did not rise to the level of an arrest. Does the government need the, assuming this case were tried, would the government need Martinez's response to the officer's question about the weapons to tie him to them? Well, it certainly would be helpful. I mean, the government could have tried Mr. Martinez without that statement on the theory of constructive possession that the weapons were in his house and, therefore, they must be his. It would have been a far weaker case than had the government tried it with the ability to use Mr. Martinez's statement, which, as the Court is well aware, was a clear confession that he was a felon on probation, knew he wasn't supposed to have firearms and was trying to get rid of them. What do you think is the governing principle when there is a question, albeit not as pointed as the one perhaps Judge Hawkins asked, but the individual is in his home and the police have shown up there in a somewhat unexpected manner? What do you think the governing legal principle is for analysis of that? The governing legal principle for when the police show up in an unexpected manner to a person's home? Right. I think the initial question is why did the police show up? Did the police go there with the intent to investigate a crime of their own accord? Did they have an idea in their mind that Mr. Martinez was a suspect in a case and they wanted to interview him? That's not what happened here. The police were called to this residence on a 911 call that was disconnected. That puts the police in a very different circumstance where they now have a duty based upon a call of a citizen to make sure that someone hasn't been stabbed or beaten up or in any other way hurt. So I think in this scenario we have to give some deference to the police judgment when they're called to a residence by a citizen for an emergency, that entry into the house is necessary. What kind of emergency existed at the point in time where Martinez was in the living room, the officer was present, and the guns were out of Martinez's reach? Well, at that point the emergency had diminished to some extent because he knew that Martinez was not injured. But he still had a situation where a 911 call had been disconnected. He didn't know why. He couldn't simply allow Martinez and his wife to come back together, either in the house or outside, without taking some steps to determine that the situation wasn't going to explode again. I understand the emergency as a basis for the warrantless entry into the house. What I'm searching for is a justification for what happened after Martinez was in the living room, physically separate from weapons that were visible to the officer. Well, the officer had, in the government's position, the officer had several bases to be with Martinez at that point. I'm not making myself clear. I'm with you all the way up to the point, at least for the purpose of our discussion here, right up to the point where they're in the living room, Martinez is separate from the weapons. He's not threatening the officer in any way. In fact, he's pretty cooperative. When he's asked about the weapons, he tells him the God's honest truth. He was trying to hide them, knowing the police were coming. But what sort of emergency basis existed at that point in time? They're in the living room. Weapons are visible to the officer. Martinez is physically separate from them. The emergency nature of the situation continues at that point because the officer, although he's established that Martinez is not hurt, still has not concluded what the reason was for the 911 disconnect call. I guess to answer your question, you have to ask, what else could the officer have done at that point? He could have left. He could have walked in the living room, I suppose, seen the gun, seen that Martinez was okay, and left. Is that a reasonable step for the officer to take at that point? Let's say the emergency is there, and by your words, it had diminished when he talks with the individual and realizes who he is and that nothing is happening. But is the emergency somehow reinvigorated by the sight of the guns? Well, it's reinvigorated in the sense that if the officer had left, he would be leaving a situation where there's an unresolved domestic violence disconnect and there's guns sitting in the house. Those aren't the only alternatives, are they? The question is, Martinez, about ownership of the guns or leave. There are other alternatives. Sure. There's any number of alternatives. I mean, he could have collected the guns. Sit down. Stay right there. Unless you give me your consent to take these weapons, I'm going to get a search warrant. How about that? That's an alternative. There are any number of alternatives. But the existence of alternatives does not invalidate the legality of the officer's actions. And the case law upholds that. I mean, the officer had any number of alternatives. Mr. Griffin suggested in his argument that the officer could have walked Martinez into the backyard. I mean, that was an alternative. But that doesn't invalidate what the officer did. Had he walked him into the backyard and found the guns out there, we'd be having the same argument. The officer took what the evidence shows were fairly minimal steps to resolve this situation. What's your best case that indicates that you may make a Terry stop in someone's home? I don't have a case on the tip of my tongue that discusses Terry stops in someone's home. We recently said in United States v. Washington that we've never decided that question of whether police officers may constitutionally conduct a Terry stop at an individual's home. So you've used the phrase Terry stop. We've said it's an undecided question. What's your best case that says that you can actually conduct a Terry stop in someone's home? Your Honor, I would argue that once the officer is in a location where he has a right to be, that his ability to detain someone, if you will, and I think even raising it to the level of a Terry stop is debatable, but his ability to detain someone for the purpose of investigation is the same as it would be in any Terry circumstance. Well, if it's not a detention for arrest and if it's not a Terry stop, what is it? Well, it's either consensual, which it wasn't. A Terry stop. Do you need Terry? No. Not necessarily. It seems like to a degree we're getting kind of your argument when Terry is kind of far afield of the circumstances in which the officer found himself, isn't it? I think that answers the prior question. The officer was in a location where he had a right to be under either the emergency doctrine or the exigent circumstances doctrine. Once he's in that location, he has the opportunity to talk to Mr. Martinez. And when he talks to Mr. Martinez and asks Mr. Martinez to move to the other room, the question is, is that a detention or not? I think it's arguably the movement from one room to the other, arguably consensual, because the officer is in a place where he has a right to be. He asks Mr. Martinez to move to another room without hands-on, without coercion, without yelling, and Mr. Martinez complies without hesitation. So I think there is an argument that when the officer is in a place where he has a right to be, admittedly, Martinez's home, and asks Mr. Martinez just to move from one room of that home to another, a room that's a room that is more private to a room that is more public, that that motion, just talking about that exclusive motion, is in fact arguably consensual. We understand your argument. We're a little over your time. Thank you for your argument. Rebuttal argument? Thank you, Your Honor. Thank you. Thank you. Just to quickly follow up on the Brooks case that you asked about, Judge. In Brooks, the officer responds to a hotel or motel, and he has information, specific information from the person in the adjacent room that says, I heard what sounded like a woman being beaten. And then the guy answers the door, and he's somewhat evasive about whether there's a woman even in the room. So that's a much different scenario than what we have here. How is it really too different, though? I mean, it troubles me, because basically you've got the 911 call, which is equivalent to someone overhearing the yelling. The officers have been there on a number of other occasions, and you've got a woman crying outside and a guy yelling inside. And it's a situation that needs to be resolved in a similar way to Brooks. I mean, how would you distinguish Brooks on that basis? In Brooks, the officer had specific information from a witness who's in a position to hear it, that he says that a woman is being beaten. And then there's some obfuscation on the part of the guy who answers the door. The only difference is the woman is inside and outside? No. We have a witness. We have a source for the officer who tells him, I heard what I thought was a woman being beaten. We don't have anything like that in this case. We have this woman. She's crying. There was an argument, and nobody's hurt, or she's not injured. And there's the guy inside the house yelling, and that's it. There's no specific information or nothing. Well, what you have in this case is you have the 911 call. You have the officers who have prior information. They've come to the house, and she has been beaten on prior occasions. And on those occasions, the man fled, right? They weren't able to get him. And this time he's in the house. Well, on this occasion, if it was the woman who was being beaten before, this woman had not been beaten, or at least she didn't say that to the police, and there was no signs of injury. He makes no attempt to even ask her. No. I think in this case, if I'm recalling this correctly, wasn't she at this woman in this case had been beaten on several other occasions? I don't know if it was several other occasions. They had been called to that residence before, and she had been the victim. She had had a fat lip at one time.  But on this occasion, she was not. There was no sign of injury, and the officer made no attempt to even ascertain what had happened. All he knew was that there had been an argument. There was no emergency. Thank you. Thank you for your argument. Thank both counsel for their argument. The case just argued will be submitted, and we'll proceed to the next case on the calendar, the United States v. William James Michel. Counsel are present if they'd come forward.
judges: Hawkins, Thomas, McKeown